# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE AUGUSTINE MAYORGA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>ESLICK, et al.,<br><br>　　　　　Defendants.<br>_____/ | Case No. 1:14-cv-00099-LJO-SKO (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS, AND (2) DUE PROCESS AND RETALIATION CLAIMS BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(Doc. 21) |

**I.　Procedural History**

Plaintiff Jose Augustine Mayorga ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 23, 2014. On June 25, 2014, the Court issued an order requiring Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on his cognizable Eighth Amendment claims. 28 U.S.C. § 1915A. Plaintiff filed an amended complaint on August 11, 2014.

**II.　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),

(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**III.    Discussion**

    **A.    Summary of Case**

Plaintiff, who is currently incarcerated at Pleasant Valley State Prison in Delano, California, brings this action against prison officials for violating his rights in 2012 while he was incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California. Plaintiff names nine staff members as defendants: Correctional Officers Eslick and Paugh; Registered Nurse Jane Doe 1; Lieutenants Knigge and Allen; Sergeant Mason; Licensed Vocational Nurse Pilcher; Captain Broderick; and D. Duncan, a Prison Industry Authority staff member who runs the garment factory at SCC.

Plaintiff's claims for monetary damages arise out of a series of events at SCC which began on May 19, 2012, and ended with his transfer to Richard J. Donovan State Prison ("RJD") in San Diego, which appears to have occurred in July or early to mid-August 2012. Plaintiff alleges claims for excessive force and denial of medical care under the Eighth Amendment, denial of due process under the Due Process Clause of the Fourteenth Amendment with respect to his transfer from general population to administrative segregation and then to RJD, and retaliation under the First Amendment vis a vis the issuance of an informational chrono documenting his accusation of excessive force.

### B.   Claim One - Eighth Amendment Violations

#### 1.   Incident on May 19, 2012

On May 19, 2012, Plaintiff and inmate Turcott got into an altercation which resulted in an institutional alarm and staff response. Plaintiff and inmate Turcott immediately complied with orders to "get down." (Doc. 21, Amend. Comp., 5:14.) After Plaintiff assumed a prone position and was in compliance with orders, Defendant Eslick ran over to Plaintiff and pepper sprayed him in the face, shoulder, and back, which caused him extreme pain. Inmate Turcott was then escorted to the medical clinic while Plaintiff was escorted to the mental health office and placed in a cell so small he could not sit down. Plaintiff repeatedly asked Defendants Eslick, Jane Doe, and Mason for assistance with decontamination and placed them on notice that he was in burning pain but they refused assistance. As a result, Plaintiff continued to endure the burning effects of the pepper spray into the next day.

##### a.   Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is

3

contextual and responsive to contemporary standards of decency, *Hudson*, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, *Wilkins*, 559 U.S. at 37-8 (citing *Hudson*, 503 U.S. at 9-10) (quotation marks omitted); *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

The allegation that on May 19, 2012, Defendant Eslick pepper sprayed Plaintiff without any justification is sufficient to support a claim against Eslick for use of excessive force, in violation of the Eighth Amendment.

### b. Failure to Decontaminate Plaintiff

Following the incident in which he was pepper sprayed by Defendant Eslick, Plaintiff repeatedly informed staff members that he was in pain and wanted to be decontaminated, but he received no assistance. The needless suffering of pain may be sufficient to demonstrate further harm, and the awareness of a need for decontamination to ameliorate the painful effects of pepper spray may support a claim under the Eighth Amendment. *Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002). Plaintiff alleges that Defendants Eslick, Jane Doe, and Mason were aware that he was in pain from the effects of the pepper spray but they disregarded his requests to be decontaminated. At the pleading stage, this is sufficient to support a claim under the Eighth Amendment for denial of medical care. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Clement*, 298 F.3d at 904-05.

### 2. Incident on May 23, 2012

Plaintiff alleges that on May 23, 2012, he was handcuffed and escorted to the program office. Midway through the escort, Defendant Paugh took over for the other officer, and he proceeded to bend Plaintiff's wrists and arms to the point of causing extreme pain, despite Plaintiff's compliance during the escort. Defendant Paugh continued to cause Plaintiff extreme pain despite Plaintiff's pleas to stop and his continued compliance. After Plaintiff arrived at the program office, he complained to Defendant Knigge that Paugh had used excessive force against him. Defendant Knigge said he did not see anything and Paugh immediately slammed Plaintiff

4

into the hallway wall, injuring Plaintiff's nose and lips.  Defendant Paugh then pushed Plaintiff hard into a holding cage, causing Plaintiff's face to hit the back metal mesh wall.  Plaintiff's bottom lip was split open and he thought his nose might be broken.

Defendant Paugh left the room and Defendant Knigge approached the holding cell.  Plaintiff said Paugh had just assaulted him and he wanted to speak with internal affairs.  Defendant Knigge reiterated that he did not see anything, and he disregarded Plaintiff's requests to have his injuries photographed and for medical attention.

Defendant Broderick entered the room approximately fifteen minutes later.  Plaintiff showed Broderick his bleeding face but Broderick told him to "man up" and said he had seen much worse. (Amend. Comp., court record p. 10:1-2.)  Defendant Broderick then told Plaintiff he was *not* assaulted by one of Broderick's officers, and Broderick did not respond to Plaintiff's request for medical attention.

Defendant Pilcher, a licensed vocational nurse, subsequently came into the room and began documenting Plaintiff's injuries.  Plaintiff requested medical attention and told her he thought his nose might be broken, but she responded that she thought he was going to ad-seg.  Defendant Pilcher told Plaintiff to fill out a medical slip once he got to ad-seg and he would be seen by a doctor within two weeks.  When Plaintiff asked what he was supposed to do about his split lips and possibly broken nose, Defendant Pilcher told him he would survive.  Plaintiff asked for something for the extreme pain but Defendant Pilcher told him she could not get him anything without a doctor's order.

Approximately two hours later, Plaintiff was taken to ad-seg.

These allegations suffice to state a cognizable excessive force claim against Defendant Paugh, *Wilkins*, 559 U.S. at 37-8, and against Defendant Knigge for failing to intervene, *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).  Furthermore, at the pleading stage, Plaintiff's allegations that Defendants Knigge, Broderick, and Pilcher were on notice regarding the extent of his physical injuries and his need to be seen by a doctor but failed to

respond are sufficient to support a claim under the Eighth Amendment for denial of medical care. *Wilhelm*, 680 F.3d at 1122.

### C.     Claim Two - Due Process Violations

#### 1.     Placement in Ad-Seg and Transfer to RJD Based on Enemy Concerns

On May 23, 2012, Plaintiff was given a 114-D lock-up order signed by Defendant Knigge and sent to administrative segregation ("ad-seg").[1] The lock-up order cited enemy concerns as the ground and referred to a confidential memo authored by Defendant Duncan. (Amend. Comp., Ex. C.)

The next day, Plaintiff was informed by Defendant Broderick that he was going to remain in ad-seg due to enemy concerns, and he was given a second copy of the 114-D lock-up order. Plaintiff disputed the existence of any enemy concerns, but he was told that there were confidential documents stating otherwise and two inmates were making allegations against him. Plaintiff was also told that he would be given copies of the confidential documents at a later date. Plaintiff requested an investigative employee because he was CCCMS[2] inmate; stated that prison officials were required to independently establish the reliability of confidential informants; and asked for an impartial, fair investigation because he did not believe any documentation existed. Defendant Broderick denied Plaintiff's request for an investigative employee and told him that he was going to be seen by the committee and transferred from SCC.

On May 25, 2012, Plaintiff reviewed the 114-D lock-up order and it stated that he was in ad-seg for disciplinary reasons.[3] However, he was not given a rules violation report. Plaintiff

---

[1] A CDC 114-D is an "Administrative Segregation Unit Placement Notice." (Amend. Comp., Ex. C.)

[2] CCCMS stands for Correctional Clinical Case Management Services, which is the lowest of the four levels of care within the prison system's Mental Health Services Delivery Program. *Coleman v. Schwarzenegger*, 922 F.Supp.2d 882, 903 (E.D. Cal. 2009). "The CCCMS level of care is for inmates whose symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units." *Coleman*, 922 F.Supp.2d at 903 n.24.

[3] Plaintiff's exhibits contradict this allegation. (Amend. Comp., Ex. C, court record p. 35.) The box "Jeopardizes Integrity of an Investigation of Alleged Serious Misconduct or Criminal Activity" is *not* checked. A comparison of the exhibits establishes that a check mark represents selection of an ad-seg placement reason. (*Id.*, pp. 35-37.) Non-selected boxes appear to have a default gray square and Plaintiff is mischaracterizing that gray square as a selected box. Plaintiff was placed in ad-seg for presenting "an immediate threat to the safety of self or others," and for endangering "institutional security." (*Id.*, p. 35.) In any event, in this case, an initial placement in ad-seg for disciplinary versus administrative reasons would not have impacted the analysis.

6

thought that he might have been placed in ad-seg for the altercation with inmate Turcott but he was never given any notice to that effect and he believed something was not right with the situation.

On May 29, 2012, Defendant Allen came to Plaintiff's cell and conducted a rules violation hearing regarding the altercation with inmate Turcott. Plaintiff asked if that was the reason he was in ad-seg, but Defendant Allen assured Plaintiff it was not and stated he was only there to adjudicate the rules violation, which was completely unrelated to Plaintiff's placement in ad-seg. Defendant Allen asked Plaintiff if he could "program" on the same yard as inmate Turcott. Plaintiff said he had already signed a chrono with inmate Turcott stating that no enemy situation existed. Defendant Allen told Plaintiff that inmate Turcott said the same thing, but he had looked at all the documentation surrounding the fight and he was going to document Turcott as Plaintiff's enemy anyway. Defendant Allen declined to tell Plaintiff what documentation he had looked at, and Allen told Plaintiff he would remain in ad-seg until his transfer from SCC.

When Plaintiff appeared before the classification committee on May 31 2012, he was assured he was not in trouble but was told he would be transferred from SCC due to an enemy situation.

Approximately two weeks later, Plaintiff received two barely legible, undated CDC-1030 Confidential Information Disclosure Forms authored by Defendant Duncan, a Prison Industry Authority superintendent who retired from SCC as a correctional officer and was rehired to supervise the garment factory. Plaintiff alleges that Defendant Duncan lacked the authority to author CDC-1030 forms placing inmates in ad-seg or to conduct investigations; and he believes that the forms were undated to allow Duncan to fill them in at a later date. Plaintiff alleges that Defendant Duncan claimed a confidential memorandum dated May 23, 2012, existed, but on July 3, 2012, E. Brooks, a classification staff representative, authored a chrono stating that the confidential memo "never existed in [Plaintiff's] file."[4] (Amend. Comp., 15:19.) On July 7, 2012,

---

[4] This allegation is contradicted by the record. E. Brooks authored a chrono which requested required paperwork and which specifically extended Plaintiff's ad-seg retention another thirty days so that the casework could be completed. In the chrono, Brooks stated that the memo dated May 23, 2012, "could not be found in the file" and was "required for the endorsement," which is distinguishable from a statement or finding that the memo never existed, as Plaintiff's allegation intimates. (Amend. Comp., Ex. E, court record p. 45.)

7

Plaintiff was given another 114-D lock-up order and he was told the wording in the original one was wrong.

Plaintiff alleges that enemies were deleted and then added, which were procedural irregularities that caused Defendants Knigge and Broderick to author the second 114-D lock-up order on July 7, 2012, again checking the box stating Plaintiff was being held in ad-seg for disciplinary reasons.[5] Plaintiff alleges that he was never assigned an investigative employee; Defendants Knigge and Broderick never questioned the informants' credibility or their allegations; and Defendant Allen made Plaintiff and inmate Turcott documented enemies against their wishes.

### 2. **Legal Standard**

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.[6] *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). The Due Process Clause itself confers no liberty interest in freedom from ad-seg. *Wilkinson*, 545 U.S. at 221. While a liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is *not* the language of the regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life. *Wilkinson*, 545 U.S. at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)) (quotation marks omitted); *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). Only those conditions which impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" give rise to a protected state-created liberty interest. *Wilkinson*, 545 U.S. at 222-23 (citing *Sandin*, 515 U.S. at 484) (internal quotation marks omitted); *Brown*, 751 F.3d at 987; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

---

[5] As set forth in footnote 3, Plaintiff's interpretation of the boxes on the form is not supported by review of the form.

[6] "There is no general liberty interest in being free from capricious government action." *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir. 1998).

8

### 3. **Findings**

Plaintiff alleges numerous facts in support of what he contends were violations of his procedural due process rights, including but not limited to the denial of an investigative employee, an independent assessment of the confidential informants' credibility and allegations, and Defendant Duncan's lack of authority to author Confidential Information Disclosure Forms. However, under federal law, Plaintiff is entitled to very minimal procedural protections with respect to placement and retention in administrative segregation, *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (quotation marks omitted), *abrogated in part on other grounds*, *Sandin*, 515 U.S. 472; *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003), and Plaintiff is entitled to those protections only if he is deprived of a protected liberty interest, which requires a showing of "atypical and significant hardship," *Wilkinson*, 545 U.S. at 221-22.

Plaintiff was a protective custody inmate who was assigned to a sensitive needs yard at SCC. (Amend. Comp., court record p. 10:9-11 & Ex. E.) Plaintiff was transferred from his yard to ad-seg on May 23, 2012, and subsequently transferred to RJD approximately two to two and a half months later based on enemy concerns.[7] Although Plaintiff may have disagreed with the decision of prison officials regarding the existence of enemy concerns, he has no recognized liberty interest in remaining free from ad-seg at SCC or in remaining at SCC and his allegations do not demonstrate otherwise. *See Ramirez v. Galaza*, 334 F.3d 850, (9th Cir. 2003) (one guidepost in determining the existence of a liberty interest is whether the challenged condition mirrors those conditions imposed upon inmates in administrative segregation and thus comport with the prison's discretionary authority) (quotation marks and citations omitted); *accord Brown*, 751 F.3d at 987; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). Plaintiff contends that he was subjected to "atypical hardships," but that is a legal conclusion unsupported by factual allegations. Loss of general population privileges, which Plaintiff mentions, does not suffice. Additionally, Plaintiff's conclusory allegation that he has a liberty interest in remaining in general population by virtue of

---

[7] Plaintiff alleges that he was in ad-seg from May 23, 2012, to August 14, 2012, but his exhibits suggest he was already at RJD by August 12, 2012. (Amend. Comp., Ex. A, court record p. 24.)

9

prison regulation language is not an accurate reflection of the law.[8] *Wilkinson*, 545 U.S. at 221; *Brown v. Oregon Dept. of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). (Amend. Comp., court record p. 15:5-10.) Accordingly, the Court finds that Plaintiff's due process fails as a matter of law in the absence of a protected liberty interest in remaining free from ad-seg, and the Court recommends dismissal of the claim, with prejudice. [9]

### D. Claim Three - Retaliation

Finally, Plaintiff alleges a claim for retaliation against Defendant Paugh. (Amend. Comp., court record p. 17:21-18:9.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's retaliation claim is premised on the following allegation: after Plaintiff complained to Defendant Knigge verbally about Defendant Paugh's use of force, Defendant Paugh authored a CDC 128-B informational/general chrono stating his concern about Plaintiff remaining on the yard given Plaintiff's allegations of excessive force against him. (Amend. Comp., Ex. G.) The Court finds that this allegation does not give rise to a plausible retaliation claim. Although Plaintiff and Defendant Paugh did not agree whether Defendant used excessive force against Plaintiff, the chrono was informational in nature and it documented Plaintiff's accusation of excessive force against Defendant. It is difficult to conceive of an informational chrono

---

[8] Plaintiff cites to *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864 (1983), but *Hewitt* is no longer good law for the point on which Plaintiff relies, which is the creation of a liberty interest by virtue of mandatory prison regulation language. *Sandin*, 515 U.S. at 483-84 ("[T]he search for a negative implication from mandatory language in prison regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause," and "the time has come to return to the due process principles" previously established: state-created liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

[9] The Court also notes that Plaintiff appears to have received the minimal procedural protections he was due under federal law with respect to ad-seg placement, which were limited to notice and an opportunity to be heard. *Toussaint*, 801 F.2d at 1100-01.

10

constituting an "adverse action" when it documented the events Plaintiff's claims occurred and which form the basis for his claim in this action. To the extent the "adverse action" was Defendant Paugh's expressed concern over Plaintiff remaining on the yard, it is again difficult to conceive of a scenario under which merely documenting this information or separating an officer and an inmate after an incident of alleged excessive force constitutes action which did not reasonably advance a legitimate penological purpose. Cal. Code Regs., tit. 15, § 3268.1(c) ("Any employee who becomes aware of an allegation of unnecessary or excessive use of force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed by the submission of the appropriate documentation.");[10] *Griffin v. Gomez,* 741 F.3d 10, 21 (9th Cir. 2014) ("[F]ederal courts should exercise restraint when reviewing management decisions taken by prison administrators to secure the safety of prisoners and state prison personnel."); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (prisoner bears burden of demonstrating no legitimate correctional purposes motivating the actions complained of).

In sum, accepting Plaintiff's version of events as true and construing them in the light most favorable to Plaintiff, *Watison*, 668 F.3d at 1112, Defendant Paugh used excessive physical force against him and Plaintiff complained to Paugh's supervising officer, Defendant Knigge. The fact that Defendant Paugh documented Plaintiff's accusation in an informational chrono and expressed concern over Plaintiff remaining on the yard in light of his accusation does not support a viable retaliation claim. It is questionable that the act constitutes an adverse action given that the chrono partially reflects Plaintiff's version of events with respect to the use of excessive force now at issue. Even if so, the circumstances do not support a plausible claim that Defendant Paugh's action was taken because of Plaintiff's exercise of his First Amendment rights and failed to

---

[10] Title 15 regulations are subject to judicial notice. Fed. R. Evid. 201(b), (c); *Roemer v. Board of Public Works of Maryland*, 426 U.S. 736, 742 n.4, 96 S.Ct. 2337 (1976); *Bovarie v. Giurbino*, 421 F.Supp.2d 1309, 1312-13 (S.D.Cal. 2006).

reasonably advance a legitimate penological purpose. Therefore, the Court finds that Plaintiff fails to state a viable retaliation claim and it recommends the claim be dismissed, with prejudice.[11]

### IV. Conclusion and Recommendations

The Court finds that Plaintiff's allegations regarding the use of excessive physical force on May 19, 2012, and on May 23, 2012, give rise to Eighth Amendment claims against Defendants Eslick, Paugh and Knigge; and his allegations regarding the denial of medical care on May 19, 2012, and on May 23, 2012, give rise to Eighth Amendment claims against Defendants Eslick, Jane Doe 2, Mason, Knigge, Broderick, and Pilcher. However, Plaintiff's allegations do not support viable claims for denial of due process and retaliation. Plaintiff was previously provided with notice of the deficiencies in his claims and an opportunity to amend, and based on nature of the deficiencies, further leave to amend is not warranted. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This action for damages proceed on Plaintiff's amended complaint against Defendants Eslick, Paugh, and Knigge for use of excessive force, in violation of the Eighth Amendment; and against Defendants Eslick, Jane Doe 2, Mason, Knigge, Broderick, and Pilcher for denial of medical care, in violation of the Eighth Amendment;

2. Plaintiff's due process claim be dismissed, with prejudice, for failure to state a claim;

3. Plaintiff's retaliation claim be dismissed, with prejudice, for failure to state a claim; and

4. Defendants Allen and Duncan be dismissed based on Plaintiff's failure to state any claims against them.

---

[11] The Court need not rely on this element in concluding Plaintiff's claim should be dismissed, but it also notes that Plaintiff's allegations do not demonstrate any chilling effect or other harm resulting from the informational chrono. *Watison*, 668 F.3d at 1114.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **June 28, 2015**                               /s/ Sheila K. Oberto
                                                                        UNITED STATES MAGISTRATE JUDGE

13